PRESIDENT, DIRECTORS AND COMPANY OF THE BANK
OF SOUTH CAROLINA *v.* F. T. ESTELL
AND A. S. COLYAR.

1. PROMISSORY NOTE. *Liability of maker for repayment. When.* After
payment of a note by the maker, to the payee, the latter cannot col-
lect it again from the assignee of his authorized agent, or enjoin the
assignee from again collecting it from the maker, or compel its deliv-
ery for collection; and if the maker, at the time he paid it, knew of
its transfer to, and ownership by the assignee, he is liable for its re-
payment at the suit of the assignee.

2. CHANCERY PLEADING. *Prayer for general relief. Effect of.* The prayer
for general relief entitles the party to such relief as the facts charged
if proven, would justify.

FROM FRANKLIN.

Appeal from the Chancery Court.    W. P. HICKER-
SON, Chancellor.

BRANNAN & HUNT for Bank.

P. TURNEY and MARKS and FITZPATRICK for Estell and Colyar.

FREEMAN, J., delivered the opinion of the Court.

This bill is filed to assert a claim of two notes of $2,500 each, given by Keith on the 9th of February, 1860, to the bank, the one due February 9, 1864, and the other 9th February, 1865. These notes, with a number of others, were given to the bank in payment for a large purchase of lands. The note of 1864 is alleged to be in the hands of Colyar, claiming as assignee of Estell, the attorney and agent of the bank, and that his transfer carried no title to it for want of authority, and for other causes. It is prayed that this note, on the hearing, be cancelled, and Colyar and Estell be enjoined from enforcing its collection. As to the note of 1865, the proceeds having been received by Colyar on his transfer of it, and having been paid by Keith to his assignee, it is prayed that defendants be compelled to "account for the value of the note."

The Chancellor decreed in favor of defendants on this branch of the case. It is earnestly insisted in argument that this is erroneous. A brief summary of the facts will serve to present the necessary facts for determination of this question.

Estell, as agent and attorney of the bank, had sold the lands, and had the notes in his hands for collec-

tion.    The notes bore interest from their date.    In March, 1862, Estell transferred the notes to Colyar, receiving the full sum they called for, principal and interest.

One aspect of the case is, did he have authority so to do, or, if not, did the bank ratify his action? After careful examination of the proof, we have no doubt of the fact, that the act of Estell was in pursuance of the authority and wishes of the bank. It is true, it was paid in Confederate money, but it is clearly shown the bank was, at that time, unhesitatingly receiving this money, and no objection of the kind would have been thought of when the transaction occurred.

It is equally certain that Mr. Estell, within two days after the receipt of the money, sent it to the bank, per express, from Chattanooga.    He swears this, and tenders the express receipt showing the fact; and further swears, that this was the mode of remittance of funds, directed by the bank.

We think the preponderance of the proof is clear in favor of the proposition that the bank received the money, and afterward wrote to know on what notes to be applied as a credit, and received proper explanations from Estell on this subject.    We might add that the bank, in receiving the full amount of the note—no discount whatever—and that in currency to which it had no objection at the time, was not likely to have objected to it, because the notes were not then due.    The failure of Confederate money afterward,

no doubt, tended to · change the views of its officers on this question. The slight mistake made by Estell in stating the number of the notes he had in his possession after the war, to have been seven, can have no weight in affecting his testimony, as he explains this as a defect of memory. It was not such a statement as he would have likely made purposely, it being against himself. We might add several other considerations tending to strengthen the conclusion indicated, drawn from a critical examination of the testimony. We deem this sufficient on this aspect of the question.

There is another view of the case, that it seems to us is conclusive, certainly as to the note of 1865, if not equally so, as to the relief sought in the note of 1864.

The fact is definitely proven by testimony of complainants, that Keith, in 1869, had paid and satisfied both of these notes to the bank. This being so, the bank cannot claim to collect from Colyar, It cannot recover or receive the amount from the payee of the note, and, at the same time, collect it again from the assignee of their agent. The bank ceased to have any interest whatever in these notes, legal or equitable, when they were paid and discharged by the payee. Keith, it is true, if he could make out a proper case, might enjoin Colyar from collecting them again off of him; but the bank has no such right, in any view of the case, neither could the bank ask that the note be delivered up or cancelled at its suit. Keith, if he had paid it properly to the bank, had the right to the paper, but not the bank. The Chancellor's

Bank of South Carolina v. Estell.

decree for these reasons, must be affirmed on this branch of the case, with costs.

During the progress of the case, Colyar filed a bill against Keith, which charges that he knew of the transfer of the notes, states Colyar's ownership of them, and the facts of the transfer, and prays that this case be consolidated, and heard with the other cause, and for general relief. The cases seem to have been treated as consolidated from this time, and were heard together, nearly all the proof purporting to be taken in both cases. The Chancellor gave a decree in favor of Colyar for the amount of the note of 1865. The bill is not drawn with much fullness or formality, but clearly states facts enough, if proven, to entitle Colyar to this relief. Such facts being stated, the prayer for general relief entitles the party to such relief as the facts charged, if proven, would justify. We have no question from the testimony, that the note was transferred by Estell in pursuance of authority from the bank, nor do we doubt but that Keith knew that Colyar had the note and claimed it. In this view, we are satisfied of the correctness of the decree of the Chancellor on this question. Keith is not in condition to urge an equity (even if he had one) with much force, if he paid the note to the bank, without taking up the paper, or making inquiry as to where it was. However, we are satisfied he did know the facts we have stated.

In any view of the case, the decree below must be affirmed with costs.